**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON**

CIVIL ACTION NO. 2:22-CV-029 (WOB-EBA)

JASON BALLARD,                                                    PLAINTIFF,

VS.                        **MEMORANDUM OPINION AND ORDER**

DANNY COPE, ET AL.,                                           DEFENDANTS.

This is a lawsuit arising out of Defendant Danny Cope's forced entry into Plaintiff Jason Ballard's home in connection with the repossession of rent-to-own furniture. Currently before the Court are Defendants' Motions to Dismiss, (Doc. 14; Doc. 15; Doc. 30; Doc. 31), and Plaintiff's Motion pursuant to Rule 56(d), (Doc. 20).

The Court has carefully reviewed this matter and, being advised, now issues the following Memorandum Opinion and Order.

### *Factual and Procedural Background*[1]

Plaintiff Jason Ballard ("Ballard") alleges that in the spring and summer of 2020, he entered into rent-to-own contracts

---

[1] Because Ballard's original complaint was unclear, the Court ordered him to file an amended complaint that only added specific allegations as to which counts were asserted against which defendants and corrected "scrivener's errors." (Doc. 28). Thereafter, Ballard did file an Amended Complaint. (Doc. 29). Defendants argue that Ballard violated the Court's order by making changes in his Amended Complaint that go beyond the specific alterations discussed in the order. (Doc. 30 at 2). However, because Defendants have not filed a motion to strike the Amended Complaint and because Ballard characterizes each alteration as a corrected "scrivener's error," (Doc. 34 at 2-3), the Court will treat the First Amended Complaint as the operative pleading.

with Defendant United Household Rentals, Inc. ("UHR") for a sectional sofa and a television. (Doc. 29 ¶ 9).

Ballard fell behind on his payments, and on March 12, 2021, UHR filed a Complaint in Boone County District Court alleging that Ballard was in possession of goods he rented from UHR which he failed to pay for or return. (*Id.* ¶¶ 10, 15). The same day, UHR obtained an ex-parte writ of possession, issued a bond, and the Boone County judge issued an order appointing Defendant Danny Cope ("Cope"), a Kenton County Constable, as a "special process server." (*Id.* ¶¶ 2, 11)[2].

Ballard alleges that the ex-parte writ of possession was based upon a false statement by Defendant Tina Maxwell ("Maxwell"), a UHR employee, that Ballard's lease had ended in April 2021, and that he did not plan to renew it. (*Id.* ¶¶ 12-15). Ballard alleges that he had renewed his lease in February 2021 and that he had been in contact with UHR regarding repair to his furniture and his intention to bring his payments current. (*Id.*).

On March 12, 2021, Cope went to Ballard's home to serve the ex-parte writ of possession. (*Id.* ¶¶ 24-27). Ballard alleges that he did not recognize Cope's uniform as that of local law enforcement, so he denied Cope entry. (*Id.* ¶ 25). Cope then identified himself as a police officer, and, "in the presence of

---

[2] In his original complaint, Ballard alleged that Cope was appointed as a "special bailiff." (Doc. 1 ¶ 11).

representatives from the rental company," attempted to pick the lock on the door. (*Id.* ¶ 27). Cope then began shouldering his way into the home. (*Id.* ¶ 28). Ballard told Cope that he possessed a weapon as Cope was trying to enter the home, and Cope threatened to kill Ballard. (*Id.* ¶¶ 29-30).

Cope then entered the home by force and pointed a gun at Ballard, kicking away a pellet gun that Ballard had dropped. (*Id.* ¶¶ 31-36). Ballard called 911, and Cope followed Ballard to his bedroom where he confined Ballard for approximately ten minutes by holding a can of pepper spray towards him. (*Id.* ¶¶ 39-41)

Cope was subsequently arrested and indicted for wanton endangerment, unlawful imprisonment, and official misconduct related to these events. (*Id.* ¶ 45). On October 11, 2021, Cope entered an *Alford* plea to the unlawful imprisonment and official misconduct charges. (*Id.* ¶ 46).[3]

Ballard filed this lawsuit on March 10, 2022. (Doc. 1). In his Amended Complaint, he alleges claims for: (1) violation of the Fourth and Fourteenth Amendments against Cope under 42 U.S.C. § 1983; (2) civil conspiracy to violate his civil rights against Cope, UHR, and Maxwell; (3) unlawful entry against Cope; (4) First Amendment retaliation against Cope; (5) trespass against Cope; (6) assault against Cope; (7) battery against Cope; (8) common law

---

[3] The documents relating to the criminal charges against Cope are attached to the original complaint. (Doc. 1-1).

false imprisonment against Cope; (9) intentional infliction of emotional distress against Cope, UHR, and Maxwell; (10) negligence per se against Cope, UHR, and Maxwell; (11) respondeat superior/vicarious liability against UHR; and (12) abuse of process against Cope, UHR, and Maxwell. (Doc. 29).

Defendants moved to dismiss both Ballard's original Complaint, (Doc. 14; Doc. 15), and his Amended Complaint, (Doc. 30; Doc. 31). Accordingly, the Court will deny Defendants' Motions to Dismiss the original Complaint as moot and analyze the Motions to Dismiss the Amended Complaint.[4] *See Ky. Press Ass'n, Inc. v. Kentucky*, 355 F. Supp. 2d 853, 857 (E.D. Ky. 2005) ("Plaintiff's amended complaint super[s]edes the original complaint, thus making the motion to dismiss the original complaint moot.") (citing *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000)).

### *Analysis*

### A. Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a suit for lack of subject matter jurisdiction. Because federal courts are courts of limited jurisdiction, "a

---

[4] Cope's Motion to Dismiss the Amended Complaint adopts his Motion to Dismiss the original Complaint, (Doc. 15), and his supporting Reply, (Doc. 23), as if fully restated in his present Motion. (Doc. 31 at 2). Accordingly, the Court will cite to Cope's original Motion when referring to his current arguments.

federal court must dismiss any claim for which it lacks jurisdiction without addressing the merits." *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 553 (6th Cir. 2012). Rule 12(b)(1) motions may be either a facial attack or a factual attack. *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016) (citing *O'Bryan v. Holy See*, 556 F.3d 361, 375 (6th Cir. 2009)). "A facial attack . . . 'questions merely the sufficiency of the pleading.'" *Id.* (quoting *O'Bryan*, 556 F.3d at 375). In analyzing a facial attack, a court must accept the allegations in the complaint as true and look for a short and plain statement of the grounds for jurisdiction. *Id.* (internal citations omitted).

### i. Rooker-Feldman Doctrine

Defendants argue that this Court lacks subject matter jurisdiction over Ballard's claims for unlawful entry, trespass, intentional infliction of emotional distress, negligence per se, and abuse of process pursuant to the *Rooker-Feldman* doctrine. (Doc. 15 at 8—9; Doc. 30 at 5). Motions to dismiss for lack of subject matter jurisdiction under *Rooker-Feldman* are construed as facial attacks. *See King v. CitiMortgage, Inc.*, No. 2:10-CV-01044, 2011 WL 2970915, at *5 (S.D. Ohio July 20, 2011). "The *Rooker-Feldman* doctrine prohibits federal courts below the United States Supreme Court from exercising 'appellate jurisdiction over the decisions and/or proceedings of state courts, including claims that are

inextricably intertwined with issues decided in state court proceedings.'" *Gilbert v. Ferry*, 401 F.3d 411, 416 (6th Cir. 2005) (quoting *Executive Arts Studio, Inc. v. City of Grand Rapids*, 391 F.3d 783, 793 (6th Cir. 2004)).

Federal claims are "inextricably intertwined" and thus barred by *Rooker-Feldman* only when they assert "an injury whose source is the state court judgment." *McCormick v. Braverman*, 451 F.3d 382, 394-95 (6th Cir. 2006) (internal citations omitted). Courts apply the *Rooker-Feldman* abstention doctrine in two categories of cases: "(1) cases that constitute a direct attack on the substance of the state court opinion, and (2) cases that challenge the procedures by which a state court arrived at its decision." *Anderson v. Charter Twp. of Ypsilanti*, 266 F.3d 487, 493 (6th Cir. 2001) (internal citations omitted).

However, the Sixth Circuit has held that the *Rooker-Feldman* doctrine "is not a panacea to be applied whenever state court decisions and federal court decisions potentially or actually overlap." *McCormick*, 451 F.3d at 395. On the contrary, the doctrine is confined to cases in which "a plaintiff asserts before a federal district court that a state court judgment itself was unconstitutional or in violation of federal law." *Id.*

Here, Defendants argue that Ballard's claims for unlawful entry, trespass, intentional infliction of emotional distress, negligence per se, and abuse of process directly stem from the

issuance of the writ of possession by the Boone County District
Court. (Doc. 15 at 8-10; Doc. 30 at 5-7). Defendants argue that,
because Ballard is challenging the propriety of the writ along
with the authority it granted and, without the existence of the
writ, none of Ballard's alleged injuries would have occurred, he
is asking this Court to improperly review the state court's
judgment.  (Doc. 15 at 9; Doc. 30 at 6).

Ballard argues that he is not attacking the state court's
decision, but rather, Defendants' tortious use of procedure in
obtaining and executing the writ. (Doc. 34 at 6; Doc. 35 at 15).
Ballard posits that he was injured by the allegedly false affidavit
Maxwell supplied to obtain the writ and Cope's allegedly illegal
entry into his home, use of excessive force, and unlawful
imprisonment of his person. (Doc. 34 at 6; Doc. 35 at 15). Ballard
also notes that he is not seeking the return of or damages related
to the property identified in the writ. (Doc. 34 at 7; Doc. 35 at
15).

The Sixth Circuit has held that "*Rooker-Feldman* does not bar
a federal-court challenge to an individual's improper conduct
during a prior state court proceeding." *Pittman v. Cuyahoga Cnty.
Dep't of Child. & Fam. Servs.*, 241 F. App'x 285, 288 (6th Cir.
2007). In *Todd v. Weltman, Weinberg & Reis Co.*, the Sixth Circuit
held that *Rooker-Feldman* did not apply where the plaintiff
complained of harm caused by a false affidavit that the defendant

submitted in a state court garnishment proceeding. 434 F.3d 432, 436-37 (6th Cir. 2006). Similarly, in *McCormick*, the Sixth Circuit found that the doctrine did not bar claims that the defendants had committed fraud, misrepresentation, and abuse of process in divorce proceedings. 451 F.3d at 392.

Here, the Court finds that, just as in *Todd* and *McCormick*, *Rooker-Feldman* does not bar Ballard's claims that Defendants engaged in improper conduct in connection with the writ of possession. Ballard has not asserted that the writ itself was unconstitutional or in violation of federal law.[5] All of his claims focus on Defendants' allegedly improper conduct, rather than the outcome of the state court proceedings. The source of Ballard's alleged injury is Defendants' actions, not the state court judgment.[6]

---

[5] Although Ballard alleges that the writ of possession was "facially deficient," (Doc. 29 ¶¶ 71, 86), he does not claim that it was issued in violation of any federal law. Rather, Ballard claims that all Defendants knew it was obtained via false representations and that it was executed through use of excessive force and in violation of Kentucky statutes. (*Id.* ¶¶ 69-70, 72-74, 85). While Ballard's claim that Cope, a Kenton County Constable, "was not statutorily or constitutionally authorized to execute" the writ, (*Id.* ¶ 86), is contrary to the state court's order directing Cope to seize the identified property, the Supreme Court has held that "[i]f a federal plaintiff present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case . . . then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) (internal citations omitted). Accordingly, Ballard's assertion that Cope illegally executed the writ, despite the state court order, is not barred by the *Rooker-Feldman* doctrine.

[6] Although Defendants cite *Kvet v. Stammitti*, No. 1:12-CV-2178, 2013 WL 179434 (N.D. Ohio Jan. 16, 2013), in support of their argument that Plaintiff's claims are barred by *Rooker-Feldman*, (Doc. 30 at 7), that

Thus, the *Rooker-Feldman* doctrine does not bar Ballard's claims.

### ii. *Plaintiff's Failure to Seek Relief in State Court*

UHR and Maxwell also argue that this Court lacks subject matter jurisdiction over Ballard's claims for intentional infliction of emotional distress, abuse of process, and negligence per se because Ballard failed to seek relief under applicable Kentucky statutes and that Ballard is collaterally estopped and barred by res judicata from bringing his claims in this Court. (Doc. 30 at 8-10).

UHR and Maxwell argue that K.R.S. §§ 425.031, 425.036, 425.046, 425.081, and 425.111 provide the course of action Ballard should have pursued to recover any damages he incurred due to the writ of possession. K.R.S. § 425.031 provides that, upon request of the defendant, "the judicial officer shall conduct a hearing" and thereafter make a determination based on the evidence introduced. K.R.S. § 425.036 provides the findings a judicial officer must make before issuing a writ of possession.

---

case is not in conflict with the Court's holding here, as that court held that it only lacked subject matter jurisdiction to the extent that the plaintiff was seeking to overturn state court orders or to relitigate the same matters, but that it could entertain claims based on the defendants' conduct in state court proceedings. *See* 2013 WL 179434, at *3. Here, Ballard has explicitly stated that he is not seeking a return of the property identified in the writ, but rather is only alleging damages based on Defendants' conduct in connection with the writ. (Doc. 34 at 7; Doc. 35 at 15).

K.R.S. § 425.046 mandates the required contents of such a writ, including that it must "inform the defendant of his right to seek an order from the court, under KRS § 425.081, to quash the writ and seek a release of the property seized." As referenced in K.R.S. § 425.046, K.R.S. § 425.081 provides that a defendant may apply for an order to quash the writ and release the seized property, which will issue if the judicial officer determines that the plaintiff is not entitled to a writ of possession.

Finally, K.R.S. § 425.111, upon which the parties in this case primarily focus, mandates that a writ of possession will not issue unless the plaintiff files a written bond and that "if the plaintiff fails to recover judgment in the action, the plaintiff shall return the property to the defendant . . . and shall pay . . . all damages referred to in subsection (2), not exceeding the amount of the bond." "The damages referred to in subjection (1) are all damages sustained by the defendant which are proximately caused by . . . the levy of the writ of possession, and the loss of possession of the property pursuant to levy of the writ of possession . . . ." K.R.S. § 425.111(2).

None of these statutes bar Ballard's action in this Court. It is undisputed that Ballard could have requested a hearing and sought an order from the Boone County District Court to quash the writ and to recover the property it identified, but that he did not do so. But none of these statutes indicate that requesting

10

such a hearing is a method, let alone the only method, through which Ballard may address alleged wrongs committed in obtaining and executing the writ. Thus, K.R.S. §§ 425.031, 425.036, 425.046, and 425.081 are inapplicable, as Ballard does not seek to quash the writ or recover the property and he does not argue that the writ failed to inform him of his right to request a hearing on those issues.

K.R.S. § 425.111 is similarly inapplicable. That section merely provides that, "if the plaintiff," UHR, "fails to recover judgment in the action," it "shall return the property to the defendant," Ballard, "and shall pay . . . all damages referred to in subsection (2), not exceeding the amount of the bond." K.R.S. § 425.111(1). However, this Court has not been asked to decide whether UHR should ultimately fail to recover in its underlying state court action regarding the rental furniture. Thus, whether any bond posted by UHR may be used to pay Ballard's damages is not a question before this Court.

Although K.R.S. § 425.111(2) provides that potentially recoverable damages under its purview include "all damages sustained by the defendant which are proximately caused by . . . the levy of the writ of possession," as discussed above, Ballard is not seeking to recover damages caused by the writ itself or the levy of the identified property, but rather damages allegedly caused by Defendants' conduct in procuring and executing the writ.

11

Accordingly, the damages addressed in K.R.S. § 425.111(2) are not the damages requested in this case.

The cases cited by the parties, *Fort Knox National Bank v. Gustafson*, 385 S.W.2d 196 (Ky. 1964), *Vallandingham v. Ray*, 108 S.W 896 (Ky. 1908), and *Ky. Land & Immigration Co. v. Crabtree*, 80 S.W. 1161 (Ky. 1904), neither address the relevant statutes nor the specific circumstances of this case. Accordingly, the referenced statutes do not limit Ballard's claims in this action.

UHR and Maxwell also argue that Ballard is barred by collateral estoppel and res judicata from seeking relief in this Court. (Doc. 30 at 9–10). The elements of collateral estoppel under Kentucky law are: (1) identity of issues; (2) a final decision or judgment on the merits; (3) a necessary issue with the estopped party given a full and fair opportunity to litigate; (4) a prior losing litigant. *Moore v. Kentucky*, 954 S.W.2d 317, (Ky. 1997) (internal citations omitted). The doctrine of res judicata has two parts: (1) claim preclusion, which bars a party from re-litigating a previously adjudicated cause of action and (2) issue preclusion, which bars the parties from relitigating any issue actually litigated and finally decided in an earlier action. *Yeoman v. Kentucky*, 983 S.W. 2d 459, 464-65 (Ky. 1998) (internal citations omitted).

While it is dubious whether Ballard could be considered a "losing litigant" in the context of an ex-parte writ of possession,

12

the state court's issuance of a writ of possession can hardly be considered a final decision. K.R.S. Chapter 425, under which the statutory authority for writs of possession is found, is titled "Provisional Remedies" and K.R.S. § 425.061 specifically provides that "determinations of the judicial officer under this chapter shall have no effect on the determination of any issues in the action other than the issues relevant to proceedings under this chapter, nor shall they affect the rights of any party in any other action arising out of the same claim." Defendants have not cited any contrary authority for their proposition that the writ should operate as a final decision with preclusive effect.

Further, it is undisputed that Ballard did not raise any of his current claims in any prior proceeding before the state court. Thus, because there has not been a final decision regarding any of the issues raised by Ballard's claims and because he has not previously brought these claims against these parties, neither collateral estoppel nor res judicata bar his claims in the present case.

## B. Plausibility of Claims[7]

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a claim if it "fail[s] to state a claim upon which relief

---

[7] Defendants do not argue that Ballard has failed to state a plausible claim for unlawful entry or trespass.

can be granted." To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *id.* at 556).

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). However, at the motion to dismiss stage, courts must construe the complaint liberally, presume all factual allegations in the complaint to be true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (internal citations omitted). "The moving party has the burden of proving that no claim exists." *Id.*

i.   *Violation of Fourth and Fourteenth Amendments*

Cope argues that Ballard has failed to plausibly allege that he used excessive force in violation of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983.[8] (Doc. 15 at 6). "To state a

---

[8] Cope's immunity arguments are addressed separately below. Cope has not argued that Ballard's claim is implausible to the extent that Ballard

14

claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (internal citations omitted).

"A seizure is 'unreasonable' under the Fourth Amendment if officers used excessive force." *Puskas v. Delaware Cnty., Ohio*, --- F.4th ---, No. 22-3390, 2023 WL 107973, at *3 (6th Cir. Jan. 5, 2023) (citing *Gambrel v. Knox Cnty.*, 25 F.4th 391, 400 (6th Cir. 2022)); *see also Hicks v. Scott*, 958 F.3d 421, 435 (6th Cir. 2020) ("The Fourth Amendment's prohibition against unreasonable seizures prohibits the use of excessive force.") (citing *King v. Taylor*, 694 F.3d 650, 662 (6th Cir. 2012)). The Fourth Amendment applies to the states through incorporation by the Fourteenth Amendment. *Stricker v. Twp. of Cambridge*, 710 F.3d 350, 358 (6th Cir. 2013).

"When a free citizen claims that a government actor used excessive force during the process of an arrest, seizure, or investigatory stop, we perform a Fourth Amendment inquiry into what was objectively 'reasonable' under the circumstances." *Coley v. Lucas Cnty., Ohio*, 799 F.3d 530, 537 (6th Cir. 2015) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Lanman v. Hinson*, 529

---

has claimed a separate Fourth Amendment violation based on Cope's allegedly warrantless entrance of his home, (*see* Doc. 29 ¶¶ 49–50).

F.3d 673, 680 (6th Cir. 2008)). "The inquiry is highly fact-dependent, and must take into account the 'perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight.'" *Coley v. Lucas Cnty., Ohio*, 799 F.3d 530, 538 (6th Cir. 2015) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). Courts must account for the fact that officers must often "make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

In determining the reasonableness of the force used, courts should consider the totality of the circumstances, including factors such as the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; and any effort made by the defendant to limit the amount of force. *Kingsley*, 576 U.S. at 397 (citing *id.* at 396). However, three factors are critical: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officer or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Hicks*, 958 F.3d at 435.

Here, there is no dispute that, at all relevant times, Cope was acting under color of state law in his position as Constable of Kenton County, Kentucky. (Doc. 15 at 5-6; Doc. 35 at 4-5).

16

Accordingly, the only question is whether Ballard has plausibly alleged that Cope violated his Fourth Amendment right to be free from unreasonable seizures by using excessive force while levying the furniture.

Ballard claims that Cope "brandished a loaded firearm," which he stuck through the door of Ballard's home and pointed at his torso. (Doc. 29 ¶¶ 32-33). Further, Cope continued to point his weapon at Ballard, even after he kicked Ballard's pellet gun away. (*Id.* ¶ 36). Ballard also alleges that Cope followed him to his bedroom, where he confined him for over ten minutes by aiming a can of pepper spray toward him. (*Id.* ¶¶ 40-41).

Taking these facts as true and making reasonable inferences in his favor, Ballard has plausibly alleged that Cope's use of force was unreasonable. Although Ballard admits that he told Cope that he had a weapon while Cope was attempting to enter the home, (*Id.* ¶ 29), Ballard said this through the door and, according to the Complaint, did not point his pellet gun at Cope at any time, which weakens Cope's argument that Ballard posed an immediate threat to his safety and the safety of the individuals around him. In fact, Cope was the one who "shoulder[ed] his way" into Ballard's home, removing the barrier of the door between them, and pointed his gun at Ballard without attempting to assure Ballard of his identity as Constable. (*Id.* ¶¶ 25, 28-29, 33). Further, the Complaint alleges that Cope continued to point his firearm at

17

Ballard, even after any threat posed by the pellet gun was removed. (*Id.* ¶ 36).

In *Mills v. Owsley County Kentucky*, a court in this District held that a claim for excessive force could proceed where the plaintiffs were neither suspected of a crime nor subject to arrest, but the defendant forcibly removed them from their home by pointing guns at them and aggressively handling them. 483 F. Supp. 3d 435, 466 (E.D. Ky. 2020); *see also Binay v. Bettendorf*, 601 F.3d 640, 648, 650 (6th Cir. 2010) (finding that the plaintiffs had sufficiently alleged that the defendants used unreasonable force where they were held at gunpoint and kept handcuffed but had no criminal record, posed no immediate threat, and did not resist arrest or attempt to flee). Similarly and critically, here, Ballard was not suspected of committing a crime and Cope was not attempting to arrest Ballard when he pointed his gun at him.

Although Cope may have attempted to limit the amount of force used by switching from a firearm to a can of pepper spray after following Ballard to his bedroom, it is not clear from the facts of the Amended Complaint that it was necessary for Cope to follow Ballard or detain him at all, let alone via the threat of force, in order to ensure the safety of everyone involved in levying the furniture. Further, Ballard has alleged that he has suffered and continues to suffer "great injury" as a result of Cope's actions. (Doc. 29 ¶ 44).

Accordingly, the Court finds that Ballard has alleged a facially plausible claim for violations of the Fourth and Fourteenth Amendments under § 1983.

### ii. Civil Conspiracy

Next, Defendants argue that Ballard has failed to adequately plead a claim for civil conspiracy to violate his civil rights under § 1983. (Doc. 15 at 7; Doc. 30 at 11–16). "A civil conspiracy under § 1983 is 'an agreement between two or more persons to injure another by unlawful action.'" *Pritchard v. Hamilton Twp. Bd. of Trs.*, 424 F. App'x 492, 507 (6th Cir. 2011) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)). To successfully plead such a conspiracy, a plaintiff must allege that: (1) a single plan existed; (2) the coconspirators shared a conspiratorial objective to deprive the plaintiff of their constitutional rights; and (3) an overt act was committed. *Id.* (citing *Revis*, 489 F.3d at 273). "Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy [and] [e]ach conspirator need not have known all of the details of the illegal plan or all of the participants involved." *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985).

Defendants advance three arguments: first, that the intra-corporate conspiracy doctrine bars Ballard's claim; second, that UHR and Maxwell did not act under color of state law; and third,

19

that Ballard's claims were not pled with the required degree of specificity. (Doc. 15 at 7; Doc. 30 at 12-16). The Court will address each argument in turn.

First, the intra-corporate conspiracy doctrine "states that if 'all defendants are members of the same collective entity, there are not two separate people to form a conspiracy.'" *Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019) (quoting *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839-40 (6th Cir. 1994)). Thus, generally, "a corporation cannot conspire with its own agents or employees." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509 (6th Cir. 1991) (citing *Doherty v. Am. Motors Corp.*, 728 F.2d 334, 339 (6th Cir. 1984)). The Sixth Circuit has held that the doctrine applies in § 1983 suits. *Jackson*, 925 F.3d at 818.

Here, Ballard alleges that Cope "was either an agent or employee of UHR, or had a contractual relationship or agreement with UHR, where Defendant Cope would provide services for UHR . . . in return for payment."[9] (Doc. 29 ¶ 60). Similarly, it is undisputed that Maxwell is an employee of UHR. (*Id.* ¶ 4).

---

[9] Although Cope argues that Ballard's allegations regarding Cope's relationship with UHR directly contravene the writ of possession, which ordered him to levy the UHR furniture, (Doc. 15 at 7), and UHR and Maxwell argue that they could not have conspired with Cope because his actions were directed by the Boone County District Court, (Doc. 41 at 7), the Court must take the allegations in the Amended Complaint as true and finds, making reasonable inferences in Ballard's favor, that it is plausible that Cope acted pursuant to both the writ and his alleged

Defendants correctly point out that, by virtue of Maxwell's undisputed employment relationship, she could not conspire with UHR under the intra-corporate conspiracy doctrine. (Doc. 30 at 12-13). However, the Court finds that UHR and Maxwell could conspire with Cope. Even taking Ballard's allegations as true, he has claimed, in the alternative, the Cope was UHR's agent/employee *or* that he had a contractual relationship with UHR. Under the latter theory, the intra-corporate conspiracy doctrine does not apply, as Cope and UHR are still separate "people" even if they are parties to the same contract. Accordingly, because Ballard has alleged at least one set of facts in which Cope and UHR are separate entities, the intra-corporate conspiracy doctrine does not bar his claim at the pleading stage.[10]

Second, "[i]f a private party has conspired with state officials to violate constitutional rights, then that party qualifies as a state actor and may be held liable pursuant to § 1983 . . . ." *Cooper v. Parrish*, 203 F.3d 937, 952 n.2 (6th Cir. 2000) (citing *Wyatt v. Cole*, 504 U.S. 158, 168-69 (1992)). Although the Sixth Circuit recognizes three tests for determining whether conduct is attributable to the state, those tests are "relevant only in cases in which there are no allegations of cooperation or

---

agreement with UHR, as each directed him to do the same thing: recover the furniture.

[10] The Court need not address Ballard's alternative argument that Cope's actions were outside the scope of any employment relationship he had with UHR. (*See* Doc. 34 at 14).

concerted action between state and private actors." *Memphis, Tenn. Area Loc., Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004) (citing *Cooper*, 203 F.3d at 952 n.2). "Private persons may be held liable under § 1983 if they willfully participate in joint action with state agents." *Id.* (collecting cases).

As discussed above, it is undisputed that Cope was acting under color of state law in his position as Constable.[11] Further, Ballard has alleged that UHR and Maxwell, although private parties, willfully conspired with Cope, a state actor, to deprive him of his constitutional rights. (Doc. 29 ¶ 58). Thus, they may be held liable under § 1983 despite their status as private parties.

However, UHR and Maxwell argue that the only alleged activity attributable to them was the false affidavit Ballard claims Maxwell submitted and that the doctrine of absolute witness immunity bars claims based on false testimony. (Doc. 41 at 8). "It is well-settled that witnesses are granted absolute immunity from suit for all testimony provided in judicial proceedings." *Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir. 1999) (citing *Briscoe v. LaHue*, 460 U.S. 325, 330-31 (1983)). The Supreme Court gave two

---

[11] Although Cope argues that "[i]t is not plausible for Cope to act under color of law pursuant to a state court order as a Constable while also allegedly acting conspiratorially with UHR and Maxwell as private actors," (Doc. 15 at 7), that argument is misplaced, as both the Supreme Court and the Sixth Circuit have held that a state actor can conspire with private actors. *See Wyatt*, 504 U.S. at 168-69; *Cooper*, 203 F.3d at 952 n.2.

rationales for the absolute witness immunity doctrine: (1) that witnesses might be otherwise reluctant to come forward to testify; and (2) that once a witness was on the stand, their testimony might otherwise be distorted by fear of future liability. *Briscoe*, 460 U.S. at 333.

The Sixth Circuit has held that testimony presented in the form of an affidavit during an ex-parte proceeding may be protected under absolute witness immunity. *Todd*, 434 F.3d at 439-42. However, "the immunity does not extend to 'complaining witnesses'—those who help instigate the judicial process by swearing to tell the truth." *Gionis v. Javitch, Block, Rathbone, LLP*, 238 F. App'x 24, (6th Cir. 2007) (citing *id.* at 444); *see also Wyatt*, 504 U.S. at 160, 164-65 (finding that complaining witnesses who "set the wheels of government in motion by instigating legal action," such as by instituting attachment or replevin proceedings, are not entitled to absolute immunity in the § 1983 context).

In *Todd*, the Sixth Circuit found that a defendant was a complaining witness and was thus not entitled to absolute witness immunity for statements made in an affidavit that instigated the legal action of garnishment, which mirrored the instigation of an action in replevin. 434 F.3d at 444-47. The *Todd* Court analyzed the rationales given by the Supreme Court in *Briscoe* and determined that withholding absolute immunity for affidavits in garnishment actions would not cause defendants to stop instituting such

actions, as that would be wholly contrary to their financial interests, but rather would incentivize them to have reasonable and unequivocal bases for their affidavits. *Id.* at 443.

Here, the Court finds that, as in *Todd*, the doctrine of absolute witness immunity does not apply to Maxwell's allegedly false affidavit, which was submitted in support of an ex-parte writ of possession. Just as in garnishment or replevin actions, here, Maxwell's affidavit "set the wheels of government in motion," as it was required for the Boone County District Court to issue the writ and it thus instigated the legal action. *See* K.R.S. § 425.076(1). Just as in *Todd*, here, the *Briscoe* rationales support this conclusion, as withholding immunity will not cause parties like UHR to stop seeking writs of possession, which would be contrary to their financial interests, but would rather incentivize them to have reasonable and unequivocal bases for the affidavits necessary to obtain them. Thus, Maxwell was a complaining witness and, as such, neither she nor UHR is entitled to absolute witness immunity for the statements contained in her affidavit.

Finally, "'[a]lthough circumstantial evidence may prove a conspiracy, it is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.'" *Marvaso v. Sanchez*, 971 F.3d

599, 606 (6th Cir. 2020) (quoting *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011)).

Ballard has alleged that a single plan existed to use force, intimidation, and/or threats against him in order to harass him and "strike fear into [his] heart" and that Defendants' objective was to deprive him of his rights to freedom of speech and to be free from excessive force and unlawful seizures. (Doc. 29 ¶¶ 58, 134, 138). Ballard has alleged that Maxwell, on behalf of UHR, committed an overt act in furtherance of the conspiracy when she submitted an affidavit containing materially false representations, which all Defendants were aware provided no legal basis for Cope's entrance to Ballard's home. (*Id.* ¶¶ 59, 72). Further, Cope participated in the conspiracy when he entered Ballard's home pursuant to an agreement with UHR to retrieve the furniture in exchange for payment. (*Id.* ¶ 60).

Accordingly, the Court finds that Ballard's § 1983 civil conspiracy claim is sufficient to survive Defendants' Motions to Dismiss.

### iii. First Amendment Retaliation

Cope also argues that Ballard has failed to plausibly state a claim for First Amendment retaliation. (Doc. 15 at 8). In order to succeed on such a claim under § 1983, Ballard must show that: (1) he engaged in constitutionally protected conduct; (2) an

adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in such conduct; and (3) the adverse action was motivated at least in part by his protected conduct. *Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir. 2005) (internal citations omitted).

Here, Ballard has alleged that he made protected statements voicing his displeasure with Cope and his unwillingness to grant Cope entry to his home and that, in part because of those statements, Cope unlawfully forced his way into the home, threatened him with a weapon, and unlawfully detained him. (Doc. 29 ¶¶ 80-81). Further, Ballard claims that Cope's conduct would deter others from making similar statements. (*Id.* ¶ 82).

Cope's sole argument in support of dismissing the claim is that the speech Ballard claims was protected actually constituted an unprotected threat. (Doc. 15 at 8). The Court agrees with Cope's position that "true threats" of violence are outside the scope of the First Amendment's protection. Unprotected "'[t]rue threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003) (internal citations omitted).

While Cope correctly notes that Ballard admitted that he told Cope he had a weapon, which may constitute a "true threat," Cope

ignores Ballard's allegation, which must be taken as true at this stage, that Cope retaliated against statements in which Ballard voiced his displeasure with Cope and explained that he was unwilling to grant Cope entry to his home, not against his separate statement that he had a weapon. (*See* Doc. 29 ¶¶ 80–81).

Because Cope does not argue that the alleged statements upon which Ballard's claim rests are unprotected, Cope has not met his burden of proving that no plausible First Amendment retaliation claim exists.

### iv.   Assault, Battery, and False Imprisonment

Next, Cope argues that Ballard has failed to state claims for assault, battery, and false imprisonment. (Doc. 15 at 10–11). Cope advances two arguments in support of dismissing these claims: first, that K.R.S. §§ 503.050 and 503.085 bar such claims; and second, that Ballard's claims are entirely conclusory. (*Id.*).

K.R.S. § 503.050(1) states that "[t]he use of physical force by a defendant upon another person is justifiable when the defendant believes that such force is necessary to protect himself against the use or imminent use of unlawful physical force by the other person." K.R.S. § 503.085(1) provides that "[a] person who uses force as permitted in KRS 503.050 . . . is justified in using such force and is immune from criminal prosecution and civil action for the use of such force . . . ." K.R.S. § 503.085(3) also provides

27

that the court should award immune defendants any attorney's fees and costs incurred in defending a such a civil action.

Cope argues that, because Ballard admitted that he informed Cope that he possessed a weapon, any subsequent force Cope used thereafter was justified and he is therefore immune from civil action. (Doc. 15 at 10). However, taking the facts in the Amended Complaint as true, the Court finds that, just as with the excessive force claim, Ballard has plausibly pled facts that lead to the conclusion that Cope did not believe the force he used was necessary to protect himself. *See King*, 694 F.3d at 664 (finding that summary judgment was inappropriate as to the application of K.R.S. § 503.085 where there was a genuine dispute as to whether an officer believed the use of force was necessary for protection). Such facts include that Ballard did not point his pellet gun at Cope at any time, Cope "shoulder[ed] his way" into the home and thereby removed the door between them, Cope continued to point his firearm at Ballard even after kicking away Ballard's pellet gun, and Cope thereafter detained Ballard for an additional ten minutes in his bedroom using a can of pepper spray. (Doc. 29 ¶¶ 28, 36, 40-41).

While not dispositive at this stage, Ballard's argument that Cope has been criminally convicted of unlawful imprisonment and official misconduct for his actions is persuasive, as Cope would have been immune from prosecution for his use of force under K.R.S.

28

§ 503.085(1) if such force was justified. (*See* Doc. 35 at 15–16). Therefore, the Court cannot conclude at the motion to dismiss stage that K.R.S. §§ 503.050 and 503.085 bar Ballard's claims.

Cope's second argument, that Ballard's claims are entirely conclusory and without any supporting substantive facts, is similarly unavailing. Under Kentucky law, "'[a]ssault is a tort which merely requires the threat of unwanted touching of the victim, while battery requires an actual unwanted touching.'" *Woosley v. City of Paris*, 591 F. Supp. 2d 913, 922 (E.D. Ky. 2008) (quoting *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. Ct. App. 2001)). The elements of a claim for false imprisonment are that (1) a defendant acted by force or threat of force and (2) with intent caused the plaintiff to be confined to an area certain. *Id.* at 923 (citing *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 278 (Ky. Ct. App. 1981)).

Ballard has alleged that Cope threatened an unwanted touching by pointing both a firearm and pepper spray at him, that Cope intentionally and offensively touched him on multiple occasions using both his body and physical manipulation of Ballard's door and other property, and that Cope intentionally kept him confined to his bedroom by threatening him with a firearm and pepper spray for over ten minutes. (Doc. 29 ¶¶ 40, 94, 101, 107–109).

Accordingly, the Court finds that Ballard has stated plausible claims for assault, battery, and false imprisonment.

29

*v.   Intentional Infliction of Emotional Distress*

Defendants also argue that Ballard has failed to state a claim for intentional infliction of emotional distress ("IIED").[12] (Doc. 15 at 10–11; Doc. 30 at 16–18). In order to recover on a claim for IIED under Kentucky law, a plaintiff must show that: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was so outrageous and intolerable that it offends generally accepted standards of decency and morality; (3) there is a causal connection between the defendant's conduct and the plaintiff's emotional distress; and (4) the plaintiff's emotional distress was severe. *Osborne v. Payne*, 31 S.W.3d 911, 913–14 (Ky. 2000).

UHR and Maxwell contend that they did not "instigate" Cope's allegedly unlawful actions and that the sole allegation against them, that Maxwell acted intentionally and recklessly by providing false information in her affidavit, is inadequate to establish an IIED claim. (Doc. 30 at 17). Further, they argue that the Boone County District Court's order disrupts any line of causation between their conduct and Cope's conduct. (*Id.* at 18).

While Ballard has not alleged that UHR and Maxwell caused Cope to engage in particular actions, he has alleged that Maxwell,

---

[12] Cope also argues that K.R.S. §§ 503.050 and 503.085 bar Ballard's intentional infliction of emotional distress claim, (Doc. 15 at 10), but for the same reasons discussed above, this argument fails.

on behalf of UHR, intentionally and recklessly submitted a false affidavit with the knowledge that it would cause an invalid writ of possession to issue which would "violate [his] security in his dwelling."[13] (Doc. 29 ¶¶ 72, 119-121). This is particularly true because the writ at issue here was ex-parte, meaning that Ballard was denied the opportunity for notice and a demand for the property. (Doc. 34 at 18).

Although UHR and Maxwell claim that the statements were "innocuous " in light of Ballard's admission that he failed to pay for or return the furniture, (Doc. 30 at 17-18), this is in direct contravention to the allegations in the Amended Complaint, which must be taken as true, that the ex-parte writ was issued based, at least in part, on Maxwell's failure to disclose Ballard's request that the furniture be repaired so that he could bring his payments up to date and that he signed a lease renewal, (Doc. 29 at ¶¶ 12-15).

This is sufficient, at the pleading stage, to establish a plausible claim for outrageous and intolerable conduct that offends generally accepted standards of decency and morality. *See In re Tomlin*, No. 15-20852, 2016 WL 1317412, at *23-24 (Bankr. E.D. Ky. Mar. 31, 2016) (denying a motion to dismiss an IIED claim

---

[13] As discussed above, Defendants' arguments that Maxwell is entitled to absolute witness immunity for her statements and that K.R.S. § 425.081 bars his claims in this Court fail.

under analogous Florida law where defendants filed foreclosure actions to attempt to collect a debt that was not past due).

Similarly, that the state court issued the writ does not sever the chain of causation between the allegedly false affidavit and the severe distress and anguish claimed by Ballard, and Defendants have not cited case law for the proposition that it does. Ballard has specifically alleged that the Boone County District Court issued the writ based on Maxwell's false statements. (Doc. 29 ¶ 12). Additionally, K.R.S. § 425.076(1) requires that an affidavit show "that great or irreparable injury" would otherwise result before a judicial officer may issue an ex-parte writ of possession, which supports a reasonable inference that the court would not have issued the writ but for Maxwell's allegedly false statements. As Defendants readily admit, "[b]efore the court's order, Cope could not, and would not levy the writ on the property," (Doc. 30 at 17), and thus violate Ballard's sense of security. Therefore, the Court finds that Ballard has plausibly alleged a causal connection between Maxwell's conduct on behalf of UHR and his emotional distress.

Ballard has also plausibly stated an IIED claim against Cope. Ballard has specifically alleged that Cope, without authority, intentionally attempted to pick the lock on his home, "shoulder[ed] his way into [the] home," threatened to kill him, pointed a loaded firearm at him, and confined him against his will for over ten

minutes using a can of pepper spray. (Doc. 29 ¶¶ 27–28, 30 32–33, 36, 40–41). These allegations, taken as true, state a claim that Cope engaged in outrageous and intolerable conduct. Ballard has also alleged that Cope's conduct caused him psychological and emotional injuries, along with mental anguish, suffering, and distress. (*Id.* ¶ 118).

Thus, Ballard's IIED claim is sufficient to survive Defendants' Motions to Dismiss.

### *vi.   Negligence Per Se*

Defendants' next argument is that Ballard has failed to state a claim against them for negligence per se. (Doc. 15 at 11–12; Doc. 30 at 19–20). "Through KRS 446.070, 'Kentucky has codified the common law negligence per se doctrine and created an avenue by which an individual may seek relief even where a statute does not specifically provide a private remedy.'" *Hickey v. Gen. Elec. Co.*, 539 S.W.3d 19, 23 (Ky. 2018) (quoting *Vanhook v. Somerset Health Facilities, LP*, 67 F. Supp. 3d 810, 817 (E.D. Ky. 2014)). Under K.R.S. § 446.070, a plaintiff may sue for a violation of the statutory standard of care if: (1) the statute is penal in nature or provides no inclusive civil remedy; (2) the plaintiff is within the class of people the statute is intended to protect; and (3) the plaintiff's injury is of the type that the statute was designed to prevent. *Id.* at 23–24 (citing *Vanhook*, 67 F. Supp. 3d at 819).

Here, Ballard alleges that Defendants violated K.R.S. §§ 509.030 *et seq.*, 522.030 *et seq.*, 425.046 *et seq.*, and 425.091 *et seq.* (Doc. 29 ¶ 126). K.R.S. §§ 509.030 and 522.030, respectively, provide that unlawful imprisonment in the second degree and official misconduct in the second degree are misdemeanors, while K.R.S. § 425.046 lists the required contents of a writ of possession when issued by a judicial officer. K.R.S. § 425.091 provides the process for taking custody of property pursuant to a writ of possession and specifically states that if the levying officer "reasonably believes that entry and seizure of the property will involve a substantial risk of death or serious bodily harm to any person he shall refrain from seizing the property and shall promptly make a return to the court . . . ."

UHR and Maxwell argue that Ballard has not plausibly alleged that they violated any of the cited statutes and the Court agrees. Ballard does not dispute that UHR and Maxwell never unlawfully imprisoned him or engaged in official misconduct. (*See* Doc. 34 at 24–25). While Ballard does argue that UHR and Maxwell violated K.R.S. §§ 425.046 and 425.091, that argument fails. Ballard has not claimed that UHR and Maxwell were or could have been responsible for drafting the writ of possession so that it complied with K.R.S. § 425.046 or for levying the furniture pursuant to the process outlined in K.R.S. § 425.091. Thus, the duty of care outlined in those statutes was not theirs to uphold and they cannot

be liable for violating them. Accordingly, the Court will dismiss Ballard's negligence per se claim against UHR and Maxwell.

As to Ballard's negligence per se claim against Cope, the Court similarly finds that Ballard has failed to allege that Cope was responsible for drafting the writ and, thus, he also cannot be held liable for violating K.R.S. § 425.046. However, Ballard has plausibly claimed that Cope violated K.R.S. §§ 509.030, 522.030, and 425.091.

While the Court need not decide whether Cope is collaterally estopped from denying civil liability in connection with his *Alford* pleas to violations of K.R.S. §§ 509.030 and 522.030 at the pleading stage, (*see* Doc. 35 at 11-13; Doc. 39 at 6-8), Ballard's allegation that Cope was criminally convicted under these statutes is sufficient to state a plausible claim that he violated them.

Although Cope argues that Ballard has not presented sufficient facts to show a violation of K.R.S. § 425.091, the Amended Complaint contains several facts that would support a reasonable inference that Cope, as the levying officer, "reasonably believe[d] that entry and seizure of the property [would] involve a substantial risk of death or serious bodily harm" to Ballard, including Cope's own statement that he would kill Ballard and that Cope pointed his gun at Ballard, (Doc. 29 ¶¶ 30, 33, 36), but chose to seize the furniture anyway.

The Court finds that Ballard has sufficiently alleged the violation of two criminal statutes, which are penal in nature, and one civil statute that do not provide private remedies for their violation and that Ballard is a member of the class of people the above-referenced statutes were designed to protect, as a member of the public and a defendant subject to the levy of a writ of possession. However, Cope argues that Ballard has failed to demonstrate that the claimed violations caused his damages. (Doc. 15 at 11–12). Nonetheless, the Court finds that Ballard has plausibly alleged that Cope caused Ballard mental pain, anguish, and emotional distress, among other damages, by unlawfully imprisoning him, engaging in official misconduct, and creating a substantial risk that Ballard would die or be seriously injured while Cope levied the furniture. (*See* Doc. 29 ¶ 127). These are the types of injuries the statutes were enacted to prevent.

Accordingly, the Court will deny Cope's Motion to Dismiss Ballard's negligence per se claim against him.

### vii. Abuse of Process

Defendants also argue that Ballard has failed to state a claim against them for abuse of process.[14] (Doc. 30 at 20–22). A defendant

---

[14] Although Cope does not specifically argue that Ballard has failed to state a plausible claim for abuse of process against him, his Motion to Dismiss adopts the citations of law, arguments, and conclusions set forth by UHR and Maxwell's Motion. (Doc. 31 at 2). Therefore, the Court will also analyze the plausibility of Ballard's abuse of process claim against Cope.

commits abuse of process under Kentucky law when they "use[] a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which that process is not designed . . . ." *Sprint Commc'ns Co., L.P. v. Leggett*, 307 S.W.3d 109, 113 (Ky. 2010) (citing Restatement (Second) of Torts § 682 (1977)). Abuse of process has two elements: (1) an ulterior purpose and (2) a willful act in the use of the process that is not proper in the regular conduct of the proceeding. *Garcia v. Whitaker*, 400 S.W.3d 270, 276 (Ky. 2013) (citing *Simpson v. Laytart*, 962 S.W.2d 392, 394 (Ky. 1998)). "[T]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion even if we assume *arguendo* bad intentions." *Simpson*, 962 S.W.2d at 395.

Assuming that Ballard's allegation that Defendants acted for the purposes of "intimidation, harassment, retaliation, and to strike fear into [his] heart," (Doc. 29 ¶ 134), satisfies the first element, Ballard still has not stated facts to satisfy the second. Generally, Kentucky courts find that the second element has been met where the defendant has used the process "'to obtain a collateral advantage,'" in other words, as "'a form of extortion . . . in the course of negotiation.'" *Simpson*, 962 S.W.2d at 395 (quoting W. Prosser, *Handbook of the Law of Torts*, § 121 (4th ed. 1971)); *see also Sprint*, 307 S.W.3d at 119 (finding evidence of a "willful act" where a company filed a lawsuit that grossly

overstated its authority to condemn property in order to induce a property owner to negotiate more generously for the sale of land); *Mullins v. Richards*, 705 S.W.2d 951, 952 (Ky. Ct. App. 1986) (finding no abuse of process where the defendants had not attempted to use indictments against the plaintiff outside the criminal proceeding and had not had contact with the plaintiff between the date of the indictment and the date of the trial).

In *Zeltiq Aesthetics, Inc. v. Medshare, Inc.*, a court found that, even assuming that the defendant's pending claims in another action were completely without merit and that they had only been filed to disrupt the plaintiff's business and intimidate its employees, the second element of an abuse of process claim could not be satisfied. No. 3:14-CV-213-CRS, 2015 WL 3447612, at *4 (W.D. Ky. May 28, 2015); *see also Kinslow v. Fifth Third Bank, Inc.*, 529 F. App'x 467, 473 (6th Cir. 2013) ("Kentucky courts have declined to find that a plaintiff has stated a claim for abuse of process where the defendant has done nothing more than file a lawsuit that lacked any legal basis for the purpose of retaliation.") (internal citations omitted).

Similarly, in *McIlwain v. Dodd*, a court dismissed an abuse of process claim even though the defendant allegedly had improper motives and made false representations in connection with criminal proceedings because she did not use the threat of arrest for a purpose outside the criminal process, such as to secure a monetary,

proprietary, or other benefit from the plaintiff. No. 3:21-CV-406-RGJ, 2022 WL 492986, at *11 (W.D. Ky. Feb. 17, 2022), *aff'd*, No. 22-5219, 2022 WL 17169006 (6th Cir. Nov. 22, 2022); *see also Trent v. Trulock*, No. 1:19-CV-00005-GNS-HBB, 2021 WL 848642, at *3 (W.D. KY. Mar. 5, 2021) (dismissing an abuse of process claim where the plaintiff merely alleged that the defendants attempted to punish and retaliate against him by instituting criminal charges, not that they acted to obtain a collateral advantage).

Here, just as in *Zeltiq and McIlwain*, Ballard has not alleged that UHR and Maxwell used the ex-parte writ of possession to secure a collateral advantage, such as a monetary benefit, or to extort something from him. In fact, just as in *Mullins*, Ballard has not alleged that he had any contact with UHR or Maxwell after they obtained the writ. On the contrary, he has merely claimed that they instituted the proceedings to intimidate, harass, and retaliate against him. Even assuming that Maxwell made false representations in order to obtain the writ and that Defendants had improper motivations, the Court cannot conclude that they have done anything more than carry out the judicial process to its authorized conclusion of obtaining the writ and levying the furniture.

Similarly, even if the Court finds that Cope used a legal process against Ballard for an ulterior purpose when he levied the furniture, Ballard has not alleged that Cope did so to obtain a

collateral advantage or as a form of extortion in the course of negotiation. Rather, he merely carried out the judicial process to its authorized conclusion by repossessing the furniture.

Therefore, the Court will dismiss Ballard's abuse of process claim.

### viii.   *Respondeat Superior/Vicarious Liability*

Finally, UHR argues that Ballard's respondeat superior claim against it fails because Ballard has failed to plead a viable claim under state law against its employee, Maxwell. (Doc. 30 at 22). Ballard responds that he has sufficiently pled claims for IIED, abuse of process, and negligence per se against Maxwell and that UHR may thus be held vicariously liable for her actions. (Doc. 34 at 22). But because, as discussed above, the Court has dismissed Ballard's claims against Maxwell for abuse of process and negligence per se, his respondeat superior claim must rise or fall with his IIED claim.

In assessing a claim under the doctrine of respondeat superior, the crux of the matter "is whether the employee or agent was acting within the scope of his employment at the time of his tortious act." *Osborne*, 31 S.W.3d at 915. Under Kentucky law, "[g]enerally, intentional torts are committed outside the scope of the employment." *Booker v. GTE.net LLC*, 350 F.3d 515, 518 (6th Cir. 2003). Nonetheless intentional conduct can sometimes be found

within the scope of employment if it is closely related to an employee's job. *Id.* The Sixth Circuit has developed four guideposts to assess whether conduct is within the scope of employment under Kentucky law: (1) whether the conduct was similar to that which the employee was hired to perform; (2) whether the action occurred within the authorized spacial and temporal limits of the employment; (3) whether the action was in furtherance of the employer's business; and (4) whether the conduct, though unauthorized, was expectable in view of the employee's duties. *Id.* at 518–19 (citing *Coleman v. United States*, 91 F.3d 820, 824 (6th Cir. 1996)).

Kentucky courts typically focus on the motive of the employee in determining whether they were acting within the scope of their employment. *See Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44, 52 (Ky 2008) (finding that a pizza delivery driver was not acting within the scope of his employment when he made a false statement to the police about a customer); *Patterson v. Blair*, 172 S.W.3d 361, 363, 372 (Ky. 2005) (finding that an automobile dealership employee was acting within the scope of his employment when he shot the tires out of a car in an attempt to repossess it).

At this stage of the case, before discovery has been completed, it is difficult to determine what duties Maxwell was hired by UHR to perform. However, the Court can reasonably infer, based on the alleged facts, that it was part of her job to

participate in legal proceedings to repossess UHR-owned furniture. Unlike in *Papa John's*, where making a false statement about a customer failed to help sell pizzas, *see* 244 S.W.3d at 52, here, it is reasonable to infer that the alleged conduct which forms the basis of Ballard's IIED claim, making false representations in an affidavit, furthered UHR's business interests by allowing it to regain custody of its furniture. Just as in *Patterson*, Maxwell's conduct was "at least incidental" to authorized conduct and there are no allegations that Maxwell falsified the affidavit for personal purposes. *See* 172 S.W.3d at 372.

Accordingly, Ballard's respondeat superior claim is sufficient to survive UHR's Motion to Dismiss.

### C. Qualified Immunity and Qualified Official Immunity

Defendants also argue that Cope is protected from Ballard's federal claims by qualified immunity and from Ballard's state law claims by Kentucky's qualified official immunity doctrine. (Doc. 15 at 12–17; Doc. 30 at 22–23).

#### i.   *Qualified Immunity*

Under the federal standard, "[i]n order to overcome a defendant's qualified immunity defense at the motion to dismiss stage, a plaintiff must plausibly allege facts showing '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the

42

challenged conduct.'" *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). However, "[t]his is a low bar, given that granting qualified immunity at the motion to dismiss stage is usually disfavored." *Id.*; *see also Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) ("'Although an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12.'") (quoting *Wesley v. Campbell*, 779 F.3d 421, 433-34 (6th Cir. 2015)).

Here, Ballard's federal claims against Cope include violation of the Fourth and Fourteenth Amendments under § 1983, civil conspiracy under § 1983, and First Amendment retaliation. As discussed above, the Court finds that Ballard has plausibly alleged the relevant violations for these claims and, thus, the only question remaining is whether the rights were clearly established at the time of Cope's conduct.

In answering this question, courts must "consider the right at issue 'in light of the specific context of the case, not as a broad general proposition.'" *Revis*, 489 F.3d at 285 (quoting *Lyons v. City of Xenia*, 417 F.3d 565, 571 (6th Cir. 2005)). The analysis depends on "'whether the right is so clearly established that a reasonable official would understand that what he is doing violates

that right.'" *Id.* (quoting *Charvat v. E. Ohio Reg'l Wastewater Auth.*, 246 F.3d 607, 616 (6th Cir. 2001)).

The Sixth Circuit has held that "there is no doubt that *Graham v. Connor* clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." *Binay*, 601 F.3d at 652 (internal quotation marks omitted). Thus, the Sixth Circuit held that, as of 2007, officers were on notice that the use of excessive force in executing a search warrant would constitute a Fourth Amendment violation. *Id.*; *see also Mills*, 483 F. Supp. 3d at 467 (finding that plaintiffs who were removed from an investigative scene had a clearly established right in 2017 to be free from unnecessary and excessive force). Further, a reasonable officer would know that, in the absence of a warrant, individuals have "a clearly established right to be free from law enforcement's non-consensual, forcible entry into [their] home." *Mills*, 483 F. Supp. 3d at 473 (citing *Cummings v. City of Akron*, 418 F.3d 676, 687 (6th Cir. 2005)).

Similarly, here, because Ballard has plausibly alleged that Cope used objectively unreasonable force in executing the writ of possession and that Cope entered his home forcibly and without his consent or a valid warrant in 2021, he has also plausibly alleged that Cope violated his clearly established Fourth Amendment rights.

Although Cope argues that he acted in an objectively reasonable manner because he relied on the writ of possession, which had been issued by the Boone County District Court and directed him to enter Ballard's home "by any force necessary,"[15] (Doc. 15 at 13-17; Doc. 15-1 at 1), that argument fails at the pleading stage. Cope relies on *Revis v. Meldrum*, 489 F.3d at 286, for its finding that "the language of the writs themselves" can support the proposition that a reasonable officer would not have understood that what he was doing violated the plaintiff's rights. (*See* Doc. 15 at 13-14). However, that same case provides that "[q]ualified immunity sweeps broadly, affording state officials ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Revis*, 489 F.3d at 286 (internal quotation marks omitted).

Here, Ballard has plausibly alleged that Cope knowingly violated the law because he was convicted under K.R.S. § 509.030

---

[15] Although Ballard argues that the writ of possession, which Defendants have filed with their Motions, is not admissible, (*see* Doc. 34 at 3; Doc. 35 at 3), that argument is inapposite. Courts may consider certain matters outside the pleadings, such as matters of public record, orders, and documents that a defendant attaches to a motion to dismiss if they are referred to in the complaint and are central to the claims therein, without converting the motion into one for summary judgment. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (internal citations omitted). Here, the writ of possession is an order issued by a state court. Although it is not attached to Ballard's Amended Complaint, it is referred to throughout Ballard's claims and is central to them. (*See* Doc. 29 ¶¶ 11-12, 22-24). Thus, this Court may properly consider the writ without converting Defendants' Motions to Dismiss to motions for summary judgment.

for "knowingly and unlawfully restraining another person" and under K.R.S. § 522.030 for "knowingly" engaging in an unauthorized exercise of his official functions, refraining from performing a duty imposed by his office, or violating a statute, rule, or regulation relating to his office.

Further, Cope relies on *Marvaso v. Sanchez* to support his immunity argument. (Doc. 15 at 16–17). In that case, the Sixth Circuit held that "where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in objective good faith." *Marvaso*, 971 F.3d at 610 (internal quotation marks omitted). But the *Marvaso* Court also noted that there is an important exception to that general rule: "'an officer cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant.'" *Id.* (quoting *Yancey v. Carroll Cnty.*, 876 F.2d 1238, 1243 (6th Cir. 1989)).

Although the state court's writ of possession is not a warrant and does not purport to include a determination of probable cause, to the extent that it operates similarly to a warrant for the purposes of immunity analysis, Cope is likewise barred from relying

on it if he knew that it was issued because of false statements or omissions. While Ballard has not alleged that Cope himself made the false statements that gave rise to the writ, he has alleged that all Defendants, including Cope, knew that it was obtained through material false representations and omissions in Maxwell's affidavit and knew that it provided no legal basis for Cope's entry into his home. (Doc. 29 ¶ 72). Accordingly, taking these allegations as true, the Court cannot conclude that Cope acted in an objectively reasonable manner by relying on a writ that he knew was obtained through false statements.

While the parties do not focus on Ballard's claims for First Amendment retaliation and civil conspiracy under § 1983, the Court finds that Ballard has also plausibly alleged that Cope violated his clearly established rights by sufficiently alleging the elements of those claims. *See Myers v. City of Centerville, Ohio*, 41 F.4th 746, 766 (6th Cir. 2022) (finding that "whether a speech-retaliation claim is clearly established at the pleadings stage rises and falls with whether the claim was sufficiently alleged") (internal citation omitted); *Peterson v. Heymes*, 931 F.3d 546, 556 (6th Cir. 2019) (denying qualified immunity where the plaintiff's claim that defendants conspired to deprive him of constitutional rights was supported by factual assertions); *Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004) (finding that where a defendant was not entitled to qualified immunity on the plaintiff's

constitutional claim, he was not entitled to qualified immunity on the plaintiff's civil conspiracy claim).

Thus, qualified immunity does not bar Ballard's federal claims at the pleading stage.

### ii.  Qualified Official Immunity

Ballard's state law claims must be analyzed under the Kentucky standard for qualified official immunity. "When a public officer or employee is sued in his or her individual capacity, that officer or employee may enjoy qualified official immunity 'which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment.'" *Ritchie v. Turner*, 559 S.W.3d 822, 831 (Ky. 2018) (quoting *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001)). "Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions . . . ; (2) in good faith; and (3) within the scope of the employee's authority." *Yanero*, 65 S.W.3d at 522.

Even if the Court assumes that Cope was engaging in a discretionary act when he decided how much force to use to execute the writ of possession, *see Smith v. Norton Hosps., Inc.*, 488 S.W.3d 23, 31 (Ky. Ct. App. 2016) (finding that "the determination of the amount of force required to effect the investigatory stop or arrest is . . . a discretionary act"), Ballard has plausibly

alleged that Cope neither acted in good faith nor within the scope of his authority as a Kenton County Constable.

Bad faith "can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position, *i.e.*, objective unreasonableness; or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Yanero*, 65 S.W.3d at 523.

Because the Court has concluded, as discussed above, that Ballard has plausibly alleged that Cope violated his clearly established Fourth and First Amendment rights despite his admission that he had a weapon, Ballard has also plausibly alleged that Cope acted in bad faith for state law immunity purposes. *See Browning v. Edmonson Cnty., Ky.*, 18 F.4th 516, 530–31 (6th Cir. 2021) (finding that where a defendant used excessive and objectively unreasonable force in violation of the plaintiff's clearly established constitutional rights, the defendant did not act in good faith and was thus not entitled to qualified official immunity under Kentucky law); *Mills*, 483 F. Supp. 3d at 476–77 (finding that allegations that a defendant used excessive and unreasonable force equated to allegations of bad faith under Kentucky qualified official immunity law).

Further, Ballard has plausibly alleged that Cope was convicted under K.R.S. § 509.030 for "knowingly and unlawfully restraining another person," that he violated K.R.S. § 425.091 because he "reasonably believe[d] that entry and seizure of the property [would] involve a substantial risk of death or serious bodily harm" to Ballard but seized the furniture anyway, and that he intentionally and maliciously acted for the corrupt motives of intimidation, harassment, retaliation, and "to strike fear into [Ballard's] heart." (Doc. 29 ¶¶ 46, 126, 134). The only case Cope relies on for his argument that he acted in good faith, *Dunn v. Felty*, is wholly inapplicable as it focuses on whether a police officer had reasonable grounds to believe that the plaintiff committed an arrestable offense. *See* No. 2004-CA-001029-MR, 2005 WL 736596, at *2 (Ky. Ct. App. Apr. 1, 2005). Accordingly, Ballard has sufficiently pled that Cope acted in bad faith.

Although Ballard's allegations of bad faith are enough to preclude the application of qualified official immunity for the purposes of Defendants' Motions to Dismiss, Ballard has also alleged that Cope did not act within the scope of his authority. Critically, Ballard has alleged that Cope was convicted under K.R.S. § 522.030 for official misconduct, which includes knowingly engaging in an unauthorized exercise of his official functions, refraining from performing a duty imposed by his office, or violating a statute, rule, or regulation relating to his office.

50

Further, under Section 101 of the Kentucky Constitution, constables' "jurisdictions shall be coextensive with the counties in which they reside" and thus, Ballard has plausibly alleged that Cope's authority as a Kenton County Constable did not extend to Boone County, where Ballard's home is located.[16] (Doc. 29 ¶ 7).

Thus, qualified official immunity does not apply to bar Ballard's state law claims.[17]

### D. Plaintiff's Motion Pursuant to Rule 56(d)

Finally, Ballard has moved to stay the Court's ruling on the pending Motions to allow him to conduct discovery under Federal Rule of Civil Procedure 56(d).[18] (Doc. 20). Federal Rule of Civil Procedure 56 applies to motions for summary judgment and Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or

---

[16] The Court need not further address the parties' arguments regarding whether the Boone County District Court properly appointed Cope as a special bailiff. (*See* Doc. 35 at 13-14; Doc. 39 at 5).

[17] Because the Court concludes that Cope is not entitled to qualified immunity or qualified official immunity at this stage of the case, UHR and Maxwell's arguments that Cope's immunity bars Ballard's claims against them, (Doc. 30 at 22-23), also fail.

[18] Although Defendants argue that Ballard's Rule 56(d) Motion was mooted when he filed his Amended Complaint, (Doc. 41 at 1-2), the Court will analyze the arguments it contains because Ballard has incorporated those arguments by reference in his Responses to Defendants' current Motions to Dismiss. (*See* Doc. 34 at 1-2; Doc. 35 at 1).

declarations or to take discovery; or (3) issue any other appropriate order."

Although Defendants' present Motions are styled as "Motions to Dismiss," Ballard nonetheless argues that they should be construed as motions for summary judgment under Federal Rule of Civil Procedure 12(d) because Defendants have presented facts outside the pleadings in support of their Motions. (Doc. 27 at 1). Federal Rule of Civil Procedure 12(d) states that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."

Ballard argues that Cope's claims that he acted reasonably including by holstering his firearm, reasonably relied on the writ of possession, was not instrumental in the acquisition of the writ, and was in fear for his safety and the safety of others are outside the allegations in the pleadings. (Doc. 20 at 2-3; Doc. 27 at 2-3). Similarly, Ballard argues that UHR and Maxwell's contentions that they followed the statutory requirements of requesting the writ, that Ballard refused to perform his obligations, and that they attempted to work with Ballard for months are also outside the pleadings. (Doc. 20 at 3; Doc. 27 at 3; Doc. 34 at 3).

However, the Court has not relied on Defendants' claims, but rather, has only based its rulings on the allegations in the Amended Complaint. Regarding the two claims that the Court has

dismissed, negligence per se against UHR and Maxwell and abuse of process against all Defendants, it is what Ballard has failed to plausibly allege, namely that UHR and Ballard violated a cited statute and that Defendants used a legal process to obtain a collateral advantage, that necessitates this outcome rather than any citations to unsubstantiated facts Defendants may have introduced. Accordingly, to the extent Defendants have raised matters outside the pleadings, they have been excluded by the Court and thus, pursuant to Rule 12(d), do not convert Defendants' Motions to Dismiss under 12(b)(6) to motions for summary judgment under Rule 56.

Although Ballard argues that the writ of possession is not admissible at the pleading stage, (*see* Doc. 20 at 4; Doc. 34 at 3; Doc. 35 at 3), that argument fails, as addressed above. The Court's consideration of the writ, an order issued by a state court that is attached to Defendants' Motions to Dismiss and is referred to in Ballard's Amended Complaint because it is central to his claims, does not convert Defendants' Motions to Dismiss to motions for summary judgment. *See Amini*, 259 F.3d at 502.

Because there are no pending motions for summary judgment under Rule 56, Ballard is not entitled to discovery under Rule 56(d) before the Court issues its ruling.

### *Conclusion*

Therefore, for the reasons stated above, **IT IS ORDERED** that:

(1) Defendants' Motions to Dismiss the original Complaint (Doc. 14; Doc. 15) be, and are hereby, **DENIED AS MOOT;**

(2) UHR and Maxwell's Motion to Dismiss the Amended Complaint (Doc. 30) be, and is hereby, **GRANTED IN PART** and **DENIED IN PART** consistent with this opinion;

(3) Cope's Motion to Dismiss the Amended Complaint (Doc. 31) be, and is hereby, **GRANTED IN PART** and **DENIED IN PART** consistent with this opinion;

(4) Plaintiff's Motion pursuant to Rule 56(d) (Doc. 20) be, and is hereby, **DENIED;** and

(5) The parties shall confer no later than **February 17, 2023,** to consider the nature and basis of their claims and defenses and the possibilities for a prompt settlement or resolution of the case, to make or arrange for the disclosures required by Rule 26(a)(1), and to develop a proposed discovery plan. Such proposed plan shall be filed no later than **March 3, 2023.**

This 1st day of February 2023.



**Signed By:**

_**William O. Bertelsman**_

**United States District Judge**